JS 44  (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Brooks, Sandra H.

**DEFENDANTS**
Brunswick Co. DHHS-Stanley,David, Director; Brunswick Co. DSS-Lytch,Cathy, Director; Brunswick Co. DSS-Myers,Patricia, Supervisor Adult Day Care Services

**(b)** County of Residence of First Listed Plaintiff   Brunswick
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Brunswick
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Braswell Law, PLLC
P.O. Box 703
Louisburg, NC 27549

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ❏ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ❏ 2  U.S. Government Defendant | ❏ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                              *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 367 Health Care/ Pharmaceutical | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | Product Liability | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 340 Marine | ❏ 368 Asbestos Personal Injury Product | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | Liability | | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation |
| | | **PERSONAL PROPERTY** | | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | ❏ 710 Fair Labor Standards Act | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 190 Other Contract | ❏ 360 Other Personal Injury | ❏ 380 Other Personal Property Damage | ❏ 720 Labor/Management Relations | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - Medical Malpractice | ❏ 385 Property Damage Product Liability | ❏ 740 Railway Labor Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | | | ❏ 751 Family and Medical Leave Act | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| | | | | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ❏ 895 Freedom of Information Act |
| ❏ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ❏ 791 Employee Retirement Income Security Act | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | ❏ 871 IRS—Third Party 26 USC 7609 | |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | | ❏ 950 Constitutionality of State Statutes |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | | |
| | ❏ 448 Education | ❏ 540 Mandamus & Other | ❏ 462 Naturalization Application | | |
| | | ❏ 550 Civil Rights | ❏ 465 Other Immigration Actions | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ❏ 2 Removed from State Court | ❏ 3 Remanded from Appellate Court | ❏ 4 Reinstated or Reopened | ❏ 5 Transferred from Another District *(specify)* | ❏ 6 Multidistrict Litigation - Transfer | ❏ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1983 AND 42 USC 1986

Brief description of cause:
County used discriminatory practices to run minority-owned healthcare facility out of business

## VII. REQUESTED IN COMPLAINT:
❏ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
500,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☒ Yes    ❏ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE
07/16/2018

SIGNATURE OF ATTORNEY OF RECORD
/s/ Ira Braswell IV

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

Case 7:18-cv-00128-H   Document 1   Filed 07/16/18   Page 1 of 21

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.**  (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.** **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Civil Action No.

| | | |
|---|---|---|
| SANDRA HEWETT BROOKS<br>　　　　Plaintiff, | )<br>)<br>)<br>) | |
| v. | )<br>)<br>) | **COMPLAINT**<br>(With Jury Demand) |
| DAVID STANLEY, individually and in his<br>capacity as the Director of Brunswick<br>County's Health and Human Services<br>CATHY LYTCH, individually and<br>in her capacity as the Director of<br>Brunswick County's Department of<br>Social Services, PATRICIA MYERS,<br>individually and in her capacity as the<br>Adult Services Supervisor for the<br>Brunswick County Department of Social<br>Services,<br>　　　　Defendants. | )<br>)<br>).<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |

The Plaintiff, Sandra Hewett Brooks, complaining of the Defendants, avers:

## I.　　NATURE OF THE CASE

1.　　In this action, Sandra Hewett Brooks (hereinafter "Ms. Brooks"), seeks

substantial damages from the Defendants for depriving her of Constitutional Rights arising

under the Fifth and Fourteenth Amendments to the U.S. Constitution and Federal Civil Rights

under 42 USC § 1983 and 42 USC § 1986. Brunswick County deprived Ms. Brooks of the

rights, privileges, and immunities secured to her by the U.S. Constitution and federal statutes

by implementing capricious policies and procedures based upon the impermissible factor of

race to unlawfully disadvantage Ms. Brooks in the making, modification, and performance of

contracts, and illegally frustrate her efforts to enjoy the fruits of her labor, and all the benefits,

privileges, terms, and conditions of the contractual relationships derived therefrom.  Abuses of

certain state protected common law rights include but are not limited to wrongful interference

with prospective contracts, unlawful restraint on trade and negligent training and supervision.

2.      By this lawsuit, Ms. Brooks seeks monetary damages in the form of compensatory damages, general damages, punitive damages, attorney fees and the costs of maintaining this action as provided by statute, as well as other and further relief as is necessary to protect, preserve and vindicate the rights of Ms. Brooks.

## II.      JURISDICTION AND VENUE

3.      These claims arose on or about July 16, 2015 within Brunswick County, North Carolina, which is specifically within the Southern Division of the United States District Court for the Eastern District of North Carolina.

4.      This matter arises under the United States Constitution, Amendments V, XIV and the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 & 1986 and Art. I, § 19 of the North Carolina Constitution for the deprivation of Ms. Brooks' civil rights by the Defendants. Specifically, these rights include Mr. Brooks' rights to liberty, property, contract, due process of law and equal protection under the law. Additionally, whether Ms. Brooks enjoyed the full and equal constitutional right to enjoy the benefits of her labor as is enjoyed by white citizens is also at issue in this matter.

5.      Furthermore, this action presents claims under the common laws of North Carolina for among other things wrongful interference with prospective contracts, unlawful restraints on trade and negligent supervision, all of which resulted from the discriminatory actions taken by the Defendants against Ms. Brooks.

6.      Jurisdiction is invoked pursuant to 28 U.S.C. § 1331. Jurisdiction over Ms. Brooks' state law claims is invoked pursuant to 28 U.S.C. § 1367. Venue is proper pursuant to 28 U.S.C. § 1391.

### III. PARTIES

7. Ms. Brooks is a citizen of the United States and a resident of the State of North Carolina where she resides in the Town of Supply, Brunswick County, North Carolina. At all relevant times herein, Ms. Brooks was self-employed as the owner and administrator of Oceanic Infinite Care, Adult Day Care Health Center ("Oceanic").

8. Upon information and belief, it is averred that the Defendant, David Stanley (hereinafter "Defendant Stanley"), is a resident of the Town of Bolivia, Brunswick County, North Carolina. At all times relevant to the claims in this action, Defendant Stanley was the Director of Brunswick County's Department of Health and Human Services and as Director, Defendant Stanley had the power to make budgetary, program and compliance-related decisions concerning all aspects of Ms. Brooks' operation of Oceanic. Therefore, Defendant Stanley's actions were under color of state law.

9. Upon information and belief, it is averred that the Defendant, Cathy Lytch (hereinafter "Defendant Lytch"), is a resident of the Town of Bolivia, Brunswick County, North Carolina. At all times relevant to the claims in this action, Defendant Lytch was the Director of Brunswick County's Department of Social Services, and as Director, Defendant Lytch had the power to make budgetary, program and compliance-related decisions concerning all aspects of Ms. Brooks' operation of Oceanic. Therefore, Defendant Lytch's actions were under color of state law.

10. Upon information and belief, it is averred that the Defendant, Patricia Myers (hereinafter "Defendant Myers"), is a resident of the Town of Bolivia, Brunswick County, North Carolina. At all times relevant to the claims in this action, Defendant Myers exercised direct program and compliance oversight of Oceanic on behalf of Brunswick County. As Brunswick County's supervisor of Adult Day Care Services during Ms. Brooks' operation

of Oceanic, Defendant Myers had the power to make decisions concerning all aspects of Ms. Brooks' management and operation of Oceanic. Consequently, Defendant Myers' actions were under color of state law.

11. On information and belief, at all times relevant to the allegations in this Verified Complaint, Brunswick County was authorized to and did waive any state-law immunity from civil liability by purchasing liability insurance, either by contract with an insurance company or by participation in an insurance risk pool that covers the claims raised in this lawsuit.

## IV. FACTUAL BASIS FOR RELIEF SOUGHT

12. At all times relevant to the claims herein, Ms. Brooks was forty-four years of age and a black or African-American female resident of the Town of Supply, Brunswick County, North Carolina (hereinafter "Town of Supply").

13. During the transactions or occurrences relevant to the claims herein, Ms. Brooks was self-employed as the owner and administrator of Oceanic Infinite Care, Adult Day Care Health Center, located in Shallotte, Brunswick County, North Carolina.

14. In 2013, Ms. Brooks served on the Brunswick County Senior Alliance ("BCSA") with the Adult Services Supervisor, Patricia Myers, and its Adult Day Care Consultant, Ms. Lori Alderfer ("Lori Alderfer"). The stated mission of the BCSA was to "promote, establish and preserve sustainable communities for healthy aging that benefits individuals and families of all ages. It also serves to create community awareness of existing and potential needs and problems of older adults in preserving their independence and provide information on resources available to them."[1]

---

[1] Brunswickcountync.gov Website: County Advisory Boards & Committees, *Brunswick Senior Resources, Inc.* (2017).

15.     Complimenting BCSA's stated mission; Brunswick Senior Resource, Inc. ("BSRI") was tasked with "operating programs and providing services aimed at assisting older adults living in Brunswick County in developing social and intellectual growth, physical well-being, thus facilitating independent living.  BSRI also promoted and initiated the development and implementation of new programs and opportunities targeting older adults in Brunswick County."

16.     While serving with Ms. Myers and Ms. Alderfer on the BCSA, members agreed that Brunswick County needed a community-based service that provided social and health services for adults needing supervised care during the day.  In 2014, following the Alliance's call for an Adult Day Healthcare Center ("ADHC"), it was at this point, Ms. Brooks told members of the Alliance of her interest in opening an ADHC facility in Brunswick County.  Almost immediately, Defendants Lytch and Meyers began erecting artificial barriers to Ms. Brooks' ownership of the facility.

17.     Prior to Ms. Brooks, Brunswick County routinely provided an experienced consultant to assist individuals interested in opening a Child or Adult Daycare Center. Brunswick County tasked its consultants with the responsibility of helping the ADHC Administrator in the development, administration and compliance monitoring of the new center.

18.     According to the Division of Aging and Adult Services ("DAAS"), a Program Consultant was required to: "Demonstrate a working knowledge of adult daycare programs, concepts, practices, policies, laws, and rules; Be able to research, analyze, and interpret Federal and State laws and formulate these laws into policies relating to adult daycare programs; Be able to implement adult daycare-related policies and procedures and also be able to monitor those policies and procedures for compliance; Possess documented adult daycare experience with a local or state DSS agency; Possess excellent communication skills; and Be proficient in Microsoft Word and Excel."

19. Some of a program consultant's specific duties included, providing training, technical assistance, and consultation services to ADHC administrators, program compliance with statutory and federal regulations, updating administrators about state or federal modifications to the rules and regulations affecting program compliance, contract development, administration and monitoring, compliance with local land use ordinances, etc. These essential functions were critical to the successful development, implementation, and longevity of Oceanic.

20. Shortly after Ms. Brooks expressed her interest in opening an ADHC, Defendants Lytch and Meyers, inexplicably replaced Lori Alderfer, an experienced ADHC consultant, with Ms. Mary Windham ("Ms. Windham"). At the point where Defendants Lytch and Meyers assigned Ms. Windham to act as Ms. Brooks' ADHC consultant; Ms. Windham lacked both, the requisite work experience and training to competently perform the specific duties of an ADHC program consultant, as identified by the state's Department of Health and Human Resources.

21. During Ms. Brooks' first "consultation" with Ms. Windham, Ms. Brooks discovered that Defendant Meyers had issued Ms. Windham an outdated Adult Day Care policies and procedures manual. Defendant Meyers never provided Ms. Windham an updated Adult Daycare policies and procedures manual; in fact, Ms. Brooks gave Ms. Windham the name of the website where Ms. Windham eventually downloaded an updated version of the manual.

22. Defendants Lytch and Meyers deliberately and purposefully disadvantaged Ms. Brooks, a first-time ADHC operator, by failing to provide Ms. Brooks with the same level of knowledge-based consultative services as enjoyed by similarly situated White providers during the development phase of their respective programs. Moreover, realizing that Ms. Windham was woefully inexperienced as an ADHC program consultant, Ms. Brooks requested consultations with Mr. David Stanly, Executive Director of Brunswick County's Health and Human Services, County Manager, Ann Hardy, Ms. Lytch and Ms. Meyers on several occasions, and was routinely ignored.

23. Aware of the Defendants' racially-motivated efforts to sabotage Ms. Brooks' efforts to open an ADHC in Brunswick County, some Brunswick County DSS caseworkers informed her of overhearing Defendant Meyers making racially disparaging comments denouncing the opening of an ADHC by a Black or African-American owner. The Defendants' discriminatory acts interfered with Ms. Brooks' ability to enjoy the fruits of her labor by unlawfully restraining her full and equal participation in commerce.

24. Defedants Lytch and Myers, Brunswick County DSS, Mr. Stanley, and Ms. Hardy: (1) Failed to provide Ms. Brooks with the same level of knowledge-based consultative services as similarly-situated White providers: (2) Failed to send out notification letters to every CAP/DA client advising them of the availability of new services, as was the standard practice for White providers; (3) Failed to place Oceanic on the Adult Services Caseworkers' Resource List; (4) Intentionally provided Ms. Brooks with incorrect policy interpretations that resulted in adverse government sanctions; (5) Arbitrarily and, without legal justification or authority changed the state and federal program eligibility requirements, which resulted in previously qualified Oceanic clients losing their eligibility and Ms. Brooks being unlawfully denied the economic expectations derived from her clients continued eligibility for state and federal financial assistance; (6) Improperly withheld Oceanic's state and federal disbursements; (7) Failed to disclose the existence of the Title XX funds disbursed to Brunswick County for funding Adult Day Care services; (8) Failed to investigate or take any corrective actions calculated to remedy the instances of race discrimination described above; (9) Openly displayed their racial animus towards African-Americans, like Ms. Brooks, by communicating to other DSS employees their desire to prevent Oceanic from opening or, in the alternative, prevent its successful operation; and (10) Violated Ms. Brooks' *Fifth (5th) and Fourteenth (14th) Amendment* rights to equal protection and due process.

25. Brunswick County's unlawful restraint on Ms. Brooks' right to make and enforce contracts coupled with her unequal and suspicious treatment by government actors cannot be explained by any known rationale means. The evidence shows that Brunswick County's actions were motivated by impermissible factors such as Ms. Brooks' race. Therefore, Ms. Brooks can establish a *Prima Facie* case of race discrimination.

26. The acts committed by the defendants against Ms. Brooks were intentional and were committed with a reckless disregard for and a deliberate indifference towards Ms. Brooks' federal constitutional and civil rights, and other enumerated state protected rights.

27. As a direct and proximate result of the Defendants' discriminatory policies, customs, practices and procedures, Ms. Brooks has suffered humiliation, anguish, depression, and anxiety. The injuries suffered by Ms. Brooks derive from the Defendants wrongful interference with her prospective contracts, their unlawful restraints on her ability to fully engage in commerce, their negligent training and supervision of adult day care consulting personnel, and stigmatization of her personal and professional character by participating in a common scheme to unlawfully close her business.

## V. CLAIMS FOR RELIEF

### COUNT I

**42 U.S.C. § 1983 Violations**
**Of Constitutional and Civil Rights**

28. Ms. Brooks incorporates by reference hereto paragraphs one (1) through twenty-seven (27) of this complaint as though fully set forth below in this Count I.

29. Defendants acted with deliberate indifference towards the constitutional and civil rights of Ms. Brooks, as described herein.

30. Defendant Stanley, as Director of Brunswick County's Department of Health and Human Services; established, enforced, directed, supervised, implemented and approved the

program eligibility requirements used by his subordinates in making eligibility determinations. Defendant Stanley was ultimately responsible for reviewing all adverse program eligibility determinations for compliance with Title XX federal eligibility requirements. Defendant Stanley's failure to act upon Ms. Brooks' repeated warnings that Defendants Lytch and Myers were using the wrong eligibility guidelines demonstrates his total indifference towards Ms. Brooks' rights and should have prompted him to conduct at least a cursory inquiry into the matter and take corrective actions, if necessary. However, Defendant Stanley failed to act after being warned about the Defendants Lytch and Myers discriminatory conduct and, as such, ratified their use of the wrong federal eligibility requirements to wrongfully interfere with several clients' access to the adult day care services provided by Oceanic. Given Defendant Stanley's ratification of his subordinates' discriminatory actions, said acts may fairly be said to represent the official policies of Brunswick County.

31. At all times addressed herein, each of the Defendants, individually and in concert with each other, acted under color of law. Their insidious acts and deliberate sabotage of Ms. Brooks' business deprived her of rights, privileges and immunities secured by the United States Constitution, and the laws of the United States and the State of North Carolina. These rights include, but are not limited to; Ms. Brooks' rights under the Fifth and Fourteenth Amendments to the United States Constitution. Further, the Defendants, under color of law, deprived Ms. Brooks of her rights to due process of law and equal protection under the law, as well as her rights to be free from unlawful government interference with and restraint upon her constitutional right to pursuit and enjoy the full and equal benefits of her labor as is enjoyed by white citizens

32. Defendants acted willfully, knowingly and with the specific intent to deprive Ms. Brooks of other rights secured to her by the Fifth and Fourteenth Amendments to the United States Constitution. These rights include, but are not limited to, Ms. Brooks' right to not be

unlawfully deprived of her right to equal opportunity nor deprived of the well- established liberty interests she possesses in her reputation and good name without due process of law.

33.     The conduct of Defendants, as set forth herein, constitute unlawful discrimination against Ms. Brooks on the basis of race, and is part of Defendants' pattern and practice of wrongful interference with the development and operation of black businesses by deliberately assigning untrained, inexperienced, ill-equipped, and ill-prepared program consultants to black business owners, like Ms. Brooks; while conversely, assigning the most experienced program consultants to similarly-situated white business owners. Here, Defendants Lytch and Meyers, inexplicably replaced Ms. Alderfer, an experienced ADHC consultant, with Ms. Mary Windham ("Ms. Windham"). Ms. Windham lacked both, prior relevant work experience and training as an ADHC program consultant.  During Ms. Brooks' first "consultation" with Ms. Windham, Ms. Brooks discovered that Defendant Meyers had issued Ms. Windham an outdated Adult Day Care policies and procedures manual.  In fact, Defendant Meyers never gave Ms. Windham an updated Adult Daycare policies and procedures manual, and it was Ms. Brooks that gave Ms. Windham the name of the website where an updated version of the manual could be obtained. Defendants Lytch and Myers deliberately hamstrung Ms. Brooks, a first-time ADHC operator, by failing to provide Ms. Brooks with the same level of consulting services as enjoyed by similarly situated White providers.  Experienced program consultants provide "start-up" businesses with the critical administrative, programming and compliance assistance necessary for successful operation.  The Defendants' duplicitous tactics improperly handicapped Ms. Brooks' business and adversely affected all aspects of Oceanic's operation including contracting, client eligibility, compliance, and management. As such, Ms. Brooks was denied equal access and opportunity to compete in an environment free from artificial barriers and racial animus in violation of 42 U.S.C. §1983.

34. The Defendants purposefully withheld federal Title XX funds targeting Adult Day Care services from Ms. Brooks by deliberately and repeatedly using the wrong federal eligibility requirements to determine client eligibility for Oceanic's services. The Defendants knowingly chose to use the stricter program eligibility requirements found in the Home and Community Grant Program, despite being instructed by Title XX program consultants to use the specific requirements listed under Title XX. Due to the Defendants' insistence upon using the wrong eligibility requirements, several "eligible" senior adults were improperly denied access to Oceanic's adult day care services. Moreover, persons wrongfully denied services received neither an opportunity to appeal nor an opportunity to re-apply. The Defendants' actions continue to injure Ms. Brooks and led to the closing and dissolution of Oceanic. Prior to closing Oceanic, Ms. Brooks requested consultations with David Stanly, Ann Hardy, Ms. Lytch and Ms. Meyers on several occasions and was simply ignored.

35. The Defendants: (1) Failed to provide Ms. Brooks with the same level of knowledge-based consultative services as similarly-situated White providers: (2) Failed to send out notification letters to every CAP/DA client announcing the availability of new services, as was the standard practice for White providers; (3) Failed to place Oceanic on the Adult Services Caseworkers' Resource List; (4) Intentionally provided Ms. Brooks with incorrect policy interpretations that resulted in adverse government sanctions; (5) Arbitrarily and, without legal justification or authority changed the state and federal program eligibility requirements, which resulted in previously qualified Oceanic clients losing their eligibility; (6) Improperly withheld Oceanic's state and federal disbursements; (7) Failed to disclose the existence of the Title XX funds disbursed to Brunswick County for funding Adult Day Care services; (8) Failed to investigate or take any corrective actions calculated to remedy the instances of race discrimination described above; (9) Openly displayed their racial animus towards African-Americans, like Ms. Brooks, by communicating to fellow DSS employees their desire to prevent

Oceanic from opening or, in the alternative, prevent its successful operation; and (10) Violated Ms. Brooks' *Fourteenth (14th) Amendment* rights to equal protection and due process. By engaging in arbitrary and racially biased practices, Brunswick County violated several well-settled legal protections against race discrimination afforded Ms. Brooks under the Fifth Amendment, Fourteenth Amendment, 42 USC § 1983, and Article I., § 19 of the North Carolina Constitution. The conduct of Defendants individually, and in concert with each other, while acting under color of state law, wrongfully interfered with Ms. Brooks' rights to make and enforce contracts, and enjoy all the benefits, privileges, terms, and conditions of the contractual relationship. As a result, Ms. Brooks continues to be injured by the Defendants' violations of her federally protected rights.

36. Brunswick County's unlawful impairment of Ms. Brooks' right to make and enforce contracts coupled with her unequal treatment by government actors cannot be explained by any known objective grounds. It is not only plausible, but it is probable that Brunswick County's actions were motivated by impermissible factors such as Ms. Brooks' race. Therefore, Ms. Brooks can establish a *Prima Facie* case of race discrimination.

37. Pursuant to 42 U.S.C. § 1988, Ms. Brooks is entitled to a reasonable allowance for attorney fees as part of her costs.

38. As a result of the Defendants' egregious conduct, we are hereby making a claim for all damages sustained by Ms. Brooks, including reliance, restitution, compensatory and punitive damages, attorney's fees and costs as provided by statute. Therefore, Ms. Brooks demands damages against the Defendants in a sum in excess of Five Hundred Thousand Dollars ($500,000.00).

COUNT II

**42 U.S.C.§ 1986**
**Action for Failure to Prevent**

39.    Ms. Brooks incorporates by reference hereto paragraphs one (1) through thirty-eight (38) of this complaint as though fully set forth below in this Count II.

40.    The Defendants individually and in concert with each other, possessed competent evidence supporting Ms. Brooks' claims concerning her disparate treatment. The Defendants though having the authority, means, opportunity and legal duty to prevent Ms. Brooks' exposure to racially motivated interference with her business and prospective economic benefits, refused to do so. Their deliberate indifference towards federal law and refusal to mitigate Ms. Brooks' damages acted to deprive Ms. Brooks of the full benefits and enjoyment of her rights and privileges as secured to her by the United States Constitution and the laws of the United States in that the Defendants.

41.    The Defendants:

    a)    Ratified the Department of Social Services' practice of using improper program eligibility requirements to unlawfully prevent persons from participating in black-owned adult day care services programs like the one owned by Ms. Brooks:

    b)    Failed in their professional duty to intercede on Ms. Brooks' behalf to prevent violations of her federally protected rights and by failing to act, demonstrated a deliberate indifference to Ms. Davis' constitutionally protected liberty and property interests;

    c)    Failed to properly train, supervise, and oversee their subordinates compliance with federal and state policies, practices and procedures concerning "qualified" Adult Day Care consulting services; and

    d)    Failed to put into practice any remedial measures reasonably calculated to minimize the type of racially discriminatory conduct, practices and procedures that violated Ms. Brooks' rights to due process and equal protection under the law.

42. The Defendants could have by reasonable diligence prevented the wrongs alleged herein by simply following the federal Title XX guidelines when determining a person's eligibility for Oceanic's adult day care services, or by granting Ms. Brooks an alternative form of recompense for unlawfully denying her rights, but the Defendants steadfastly refused to use the correct Adult Day Care policies and procedures manual to determine program eligibility even after being notified they were using an incorrect criteria.

43. Pursuant to 42 U.S.C. § 1988, Ms. Brooks is entitled to a reasonable allowance for attorney fees as part of her costs.

44. The Defendants, by and through, their willful refusal to prevent or mitigate the wrongs endured by Ms. Brooks, as described herein, are jointly and severally liable for reliance, restitution, compensatory and punitive damages, attorney's fees and costs as provided by statute. Therefore, Ms. Brooks demands damages against the Defendants in a sum in excess of Five Hundred Thousand Dollars ($500,000.00).

## COUNT III

### N.C.G.S. 75-1 to 75-2
### Unfair and Deceptive Acts Affecting Commerce

45. Ms. Brooks incorporates by reference hereto paragraphs one (1) through forty-four (44) of this complaint as though fully set forth below in this Count III.

46. In 2014, the Defendants individually and in concert with each other, agreed amongst themselves to erect artificial barriers to Ms. Brooks' opening and operation of an Adult Day Healthcare Center in Brunswick County.

47. In furtherance of their conspiracy to place unreasonable restraints upon Ms. Brooks' ability to engage in commerce in North Carolina, the Defendants, without notice, replaced the experienced Adult Day Healthcare consultant ("Ms. Adefer") originally assigned to Ms. Brooks who: (1) Had demonstrated a working knowledge of adult

daycare programs, concepts, practices, policies, laws, and rules; (2)  Had showed the ability to research, analyze, and interpret Federal and State laws and formulate these laws into policies relating to adult daycare programs; (3) Had implemented adult daycare-related policies and procedures and was able to monitor those policies and procedures for compliance; (4) Had proven adult daycare experience with a local and state DSS agencies; and (5) Possessed excellent communication skills and demonstrated proficiencies in Microsoft Word and Excel with an Adult Day Healthcare consultant (Ms. Windham") who possessed no previous training or work experience as an Adult Day Healthcare consultant.  Ms. Windham was unable to provide Ms. Brooks with any of the training, technical assistance, consulting services, program compliance monitoring, updates of state or federal modifications to the program's rules and regulations, contract development, administration and monitoring, compliance with local land use ordinances, etc.  This single action clearly manifested the Defendants' intention to unfairly hindered Ms. Brooks' ability to participate in commerce without unlawful restraint and suppressed competition in the newly formed market for Adult Day Healthcare Services.

48.     The Defendants failed to: (1) Failed to provide Ms. Brooks with the same level of knowledge-based consultative services as similarly-situated White providers: (2) Failed to send out notification letters to every CAP/DA client advising them of the availability of new services, as was the standard practice for White providers; (3) Failed to place Oceanic on the Adult Services Caseworkers' Resource List; (4) Intentionally provided Ms. Brooks with incorrect policy interpretations that resulted in adverse government sanctions; (5) Arbitrarily and, without legal justification or authority changed the state and federal program eligibility requirements, which resulted in previously qualified Oceanic clients losing their eligibility and Ms. Brooks being unlawfully denied the economic expectations derived from her clients continued eligibility for state and federal financial assistance; (6) Improperly withheld Oceanic's state and federal disbursements; (7) Failed to disclose the existence of the Title XX funds disbursed to Brunswick

County for funding Adult Day Care services; (8) Failed to investigate or take any corrective actions calculated to remedy the instances of race discrimination described above; (9) Openly displayed their racial animus towards African-Americans, like Ms. Brooks, by communicating to other DSS employees their desire to prevent Oceanic from opening or, in the alternative, prevent its successful operation; and (10) Violated Ms. Brooks' *Fourteenth (14th) Amendment* rights to equal protection and due process. The actions by the Defendants were unreasonable, unjustifiable, and based upon the Defendants' unlawful consideration of Ms. Brooks' race.

49. Ms. Brooks' had a six figure budget commitment from the North Carolina Department of Health and Human Services that was forfeited by Oceanic's closing. Oceanic's closing was due to the unfair, unreasonable and racially discriminatory actions undertaken by the Defendants to limit Ms. Brooks' ability to engage in commerce unrestrained by unlawful race discrimination. Shortly after Oceanic closed, Defendant Myers became the marketing director for the Saber Healthcare Group who coincindently now operates the only Adult Day Healthcare Center in Brunswick County.

50. Due to the Defendants unfair, deceptive, and discriminatory restraints on commerce, Ms. Brooks is entitled to treble damages per statute.

51. Pursuant to 42 U.S.C. § 1988, Ms. Brooks is entitled to a reasonable allowance for attorney fees as part of her costs.

52. The above mentioned acts by the Defendants were unfair, unjustified, willful, malicious, reckless, and motivated by racial animus. The Defendants' unlawful restraint upon commerce was intended to drive Ms. Brooks out of business and leave Saber Healthcare Group as the only remaining provider of Adult Day Healthcare services in Brunswick County. Consequently, the Defendants are jointly and severally liable for reliance, restitution, compensatory and punitive damages, attorney's fees and costs as provided by statute.

Therefore, Ms. Brooks demands damages against the Defendants in a sum in excess of Five Hundred Thousand Dollars ($500,000.00).

COUNT IV

NEGLIGENT SUPERVISION

53. Ms. Brooks incorporates by reference hereto paragraphs one (1) through fifty-two (52) of this complaint as though fully set forth below in this Count IV.

54. This is a claim arising under the laws of the State of North Carolina claiming that Defendant Stanley committed the tort of negligent training and supervision.

55. The conduct of Defendant Stanley, as set forth above, constitutes a breach of his duty to Ms. Brooks to exercise care in training and supervising Defendants Lytch and Myers and others on adherence to the proper state and federal guidelines in determining an individual's eligibility for Title XX programs and excluding the impermissible consideration of race as a factor in making decisions affecting commerce.

56. Defendant Stanley was aware DSS: (1) Failed to provide Ms. Brooks with the same level of knowledge-based consultative services as similarly-situated White providers: (2) Failed to send out notification letters to every CAP/DA client advising them of the availability of new services, as was the standard practice for White providers; (3) Failed to place Oceanic on the Adult Services Caseworkers' Resource List; (4) Intentionally provided Ms. Brooks with incorrect policy interpretations that resulted in adverse government sanctions; (5) Arbitrarily and, without legal justification or authority changed the state and federal program eligibility requirements, which resulted in previously qualified Oceanic clients losing their eligibility and Ms. Brooks being unlawfully denied the economic expectations derived from her clients continued eligibility for state and federal financial assistance; (6) Improperly withheld Oceanic's state and federal disbursements; (7) Failed to disclose the existence of the Title XX funds disbursed to Brunswick County for funding Adult Day Care services; (8) Failed to investigate or

take any corrective actions calculated to remedy the instances of race discrimination described above; (9) Openly displayed their racial animus towards African-Americans, like Ms. Brooks, by communicating to other DSS employees their desire to prevent Oceanic from opening or, in the alternative, prevent its successful operation; and (10) Violated Ms. Brooks' *Fourteenth (14th)* *Amendment* rights to equal protection and due process.  Consequently, Ms. Brooks charges Defendant Stanley, as Executive Director of Brunswick County's Health and Human Services, for being responsible for her humiliation, depression and economic losses, as he was aware of the high probability that the Defendants' disparate treatment of Ms. Brooks was rooted in racial bias, yet he failed to expend the slightest effort to prevent or remedy the deprivation of Ms. Brooks' rights.

57.     Pursuant to 42 U.S.C. § 1988, Ms. Brooks is entitled to a reasonable allowance for attorney fees as part of her costs.

58.     Defendant Stanley's failure to properly train and monitor his co-defendants compliance with the federal Title XX eligibility guidelines and Brunswick County's anti-discrimination policies make these Defendants jointly and severally liable for reliance, restitution, compensatory and punitive damages, attorney's fees and costs as provided by statute. Therefore, Ms. Brooks demands damages against the Defendants in a sum in excess of Five Hundred Thousand Dollars ($500,000.00).

## VI.     <u>JURY DEMAND</u>

## **THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

## VII.     <u>PRAYER FOR RELIEF</u>

**THEREFORE**, Ms. Brooks prays for relief as follows:

1.     Judgment against Defendants jointly and severally in a sum in excess of Five Hundred Thousand Dollars ($ 500,000.00) for reliance, restitution, compensatory and punitive damages, attorney's fees and costs as provided by statute. Said punitive damages are for

the violations of Ms. Brooks' constitutional, civil and state protected rights as alleged hereinabove;

2.      That the court declares the actions of the Defendants be in violation of law as set forth herein;

3.      That the court awards Ms. Brooks interest on any award of reliance, restitution, and compensatory damages at the applicable legal rate;

4.      That the court awards Ms. Brooks interest on any award of punitive damages at the applicable legal rate;

5.      That the court declares the Defendants' actions constituted an unfair and unreasonable restraint on commerce thus entitling Ms. Brooks to treble damages as proscribed by N.C.G.S. § 75-16;

6.      That the court awards Ms. Brooks reasonable attorney fees together with the costs of maintaining  this action as provided  by  statute and federal common law; and

7.      That the court awards Ms. Brooks such other and further relief as may be just and proper to afford complete relief.

**RESPECTFULLY SUBMITTED** this 16th day of July 2018.

/s/ Ira Braswell IV_____
Ira Braswell IV
*Attorney for Sandra Hewett Brooks*
BRASWELL LAW, PLLC
P.O. Box 703
Louisburg, NC 27549
Telephone:    (252) 458-2203
Facsimile:    (980) 225-0132
NC State Bar No. 41799